**BADER AUTOMOTIVE & INDUSTRIAL SUPPLY CO., INC.,
Plaintiff-Respondent,**

**v.**

**Glynn J. GREEN (now known as Glynn J. Wisniewski), Defendant-Appellant.**

**No. 36294.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

Feb. 10, 1976.

---

Richard P. Nangle, St. Louis, for defendant-appellant.

Sullivan & Watkins, A. Michael Sullivan, David J. Rauscher, Clayton, for plaintiff-respondent.

GUNN, Justice.

Defendant Glynn J. Green [1] appeals from a judgment of the trial court enforcing a restrictive agreement and enjoining defendant Green from directly or indirectly competing with plaintiff Bader Automotive & Supply Co., Inc. in plaintiff's business. On appeal, defendant Green contends that the restrictive agreement was impermissibly altered by plaintiff and is therefore unenforceable. We find sufficient basis for the trial court's judgment and affirm.

In September, 1970, defendant Green began working as the only salesman for Richard J. Bader, who operated a sole proprietorship in the sale and distribution of auto body supplies to auto body shops in the St. Louis metropolitan area, including portions of adjoining Illinois counties. On April 1, 1971, Mr. Green and Mr. Bader executed the following agreement which has caused the controversy giving rise to this litigation:

"AGREEMENT

"TO: [Bader Automotive & Industrial Supply Co., Inc.]

'In consideration of my employment by Bader Supply Company, a Missouri corporation, I hereby promise and agree that I will not, while in the service of Bader Supply Company, or at anytime thereafter, disclose to any person the business methods, names or addresses of the clients, or the trade secrets of Bader Supply Company; and, further, while in the service of Bader Supply Company and for a period of three (3) years after leaving their service of Bader Supply Company will not, under any circumstances or conditions whatsoever, engage in, or become interested, directly or indirectly, as an individual, partner, stockholder, director, officer, agent, employee, trustee, or in any other relation or capacity whatsoever, in or to, the business of [distribution

---

1. For reasons best known to him—the record discloses none—Glynn J. Green changed his name to Glynn J. Wisniewski.

of auto body supplies], within any state in which <u>Bader Supply Company</u> is now engaged in business at the time of the termination of my employment.

'Further, as a part of the consideration of this Agreement, I agree that I will not, at any time, while in the employ of <u>Bader Supply Company</u>, or within three (3) years after leaving its services from whatsoever caused, for myself or for any other person or company in anyway directly or indirectly divert, take away, or attempt to divert or take away or solicit any of the clients of <u>Bader Supply Company</u>.

'It is further expressly agreed that if I, while this Agreement remains in effect, shall violate any of its terms by entering into the employ or service, or otherwise act in aid of the business of any rival company or concern engaged in the same or similar general line of business, or solicit any of the clients of [Bader Supply Co], said [Bader Automotive & Ind. Sup. Co Inc.] shall be entitled to an injunction to be issued by any competent Court of equity, in enjoining and restraining me from the continuation of such employment, service, solicitation or any act in aid of the business of any rival company or concern.'

Dated: 4/1/71

<u>Glynn J. Green</u>
Employee

<u>Richard J. Bader</u>
Employer"[2]

The bracketed portions of the agreement—"Bader Automotive & Industrial Supply Co., Inc.," "distribution of auto body supplies," "Bader Automotive & Ind. Sup. Co Inc.," and, in one instance, "Bader Supply Co"—denote blank spaces in the typewritten agreement which were handwritten by Richard Bader. The underlined portions of the agreement were typed in at Mr. Bader's direction.

The controversy centers on whether the blanks were filled in before or after the agreement was signed by both parties on April 1, 1971, and without the authority of defendant Green. Mr. Bader asserts that the name of his corporation, Bader Automotive & Industrial Supply Co., Inc., and the fact that it was in the business of distribution of auto body supplies, was inserted in the agreement prior to its being signed by defendant Green and Mr. Bader. In other words, Mr. Bader maintains that the agreement was complete and without blank spaces at the time it was signed by both parties on April 1, 1971. Mr. Bader also testified that at the time the agreement was signed on April 1, 1971 he was in the process of having his business incorporated but that due to the possibility that the corporate name desired might not be available for use, he was not certain of the exact corporate name for his company. Hence, the reason for the use of the two corporate names in the agreement—Bader Automotive & Industrial Supply Co., Inc. and Bader Supply Company—was that he was uncertain what the corporate name would be and that as an individual he had done business as Bader Supply Company. Mr. Bader also testified that this matter had been discussed with defendant Green prior to and at the signing of the agreement; that the restriction against Mr. Green's participation in the business of "distribution of auto body supplies" was also a part of the written agreement executed by both parties on April 1, 1971. Mr. Bader acknowledged that the certificate of incorporation for plaintiff Bader Automotive & Supply Co., Inc. was not issued by the Missouri Secretary of State until May 26, 1971.

Defendant Green acknowledged signing the agreement on April 1, 1971 and also

---

**2.** Inasmuch as defendant Green does not challenge the terms of the restrictive agreement as being overbroad or vague—particularly as to territory—so as to render the agreement unreasonable, void and against public policy, we need not delve into that issue. See: *National Motor Club of Mo., Inc. v. Noe*, 475 S.W.2d 16 (Mo.1972); *Prentice v. Williams*, 324 S.W.2d 466 (Mo.App. 1959).

acknowledged that "Bader Supply Company" was typed in the agreement, as indicated, at the time he signed it. However, he categorically denied that "Bader Automotive & Industrial Supply Co., Inc." or the restriction on his business activity to "distribution of auto body supplies" had been filled in at the time he signed the agreement; that when he executed the agreement, the spaces for those two items were blank and had been filled in without his permission subsequent to the signing of the agreement. Defendant Green had no copy of the agreement to support his testimony. Defendant Green acknowledged that his business with Mr. Bader before and after the execution of the agreement had been as an employee in the sale of auto body supplies; that subsequent to the incorporation of the business he had received his income on checks issued by the plaintiff corporation. Defendant Green further acknowledged that he left the plaintiff corporation's employment on September 15, 1973 and thereafter carried on and sold auto body supplies to customers to which he had formerly made sales on behalf of the plaintiff corporation.

The trial court found the issues in favor of the plaintiff corporation and issued a decree restraining and enjoining defendant Green for a period to September 14, 1976 from directly or indirectly competing with plaintiff corporation in an area defined as the metropolitan St. Louis area, including portions of Illinois.

On appeal, defendant Green does not challenge the trial court's finding that he has been engaged in competition with the plaintiff corporation in violation of the terms of the restrictive agreement. Rather, defendant Green argues that the agreement was materially altered without his knowledge, authorization or consent. Defendant also raises a second point, which seems to meld into the first, that the trial court erred in finding that the plaintiff corporation had adopted or ratified the agreement, since the agreement had been materially altered without defendant

Green's authority or consent. The primary thrust of defendant Green's challenge to the trial court's ruling is thus aimed at the question of whether the trial court could properly find that the restrictive agreement was complete when executed by Mr. Bader and Mr. Green. Mr. Bader says it was; Mr. Green says it was not. We are thus confronted with the testimony of plaintiff and defendant being diametrically opposed on the key point.

■ In our review of this court tried case, we are governed by Rule 73.01.3, V.A.M.R., which tells us that we are to review the case on the law and the evidence, giving due regard to the opportunity of the trial court to have judged the credibility of the witnesses. *Brunswick Corp. v. Briscoe*, 523 S.W.2d 115 (Mo.App.1975). We are mindful of the deletion in the current Rule 73 of the phrase "the judgment shall not be set aside unless clearly erroneous" which was expressed previously in Rule 73.01(d). But as stated in *Morris v. Holland*, 529 S.W.2d 948 (Mo.App.1975), the amendment to the Rule 73.01 effective January 1, 1975, has not converted the appellate courts into "judicial second guessers." We believe, as stated in *Morris v. Holland*, supra, at 952: "that when the decision depends upon the credibility of the witnesses and the weight of the evidence, an appellate court should generally defer to the findings of the trial courts unless it is satisfied they should have been otherwise." With the foregoing postulation to guide us, we find nothing in our review of this record which impels us to reach a different conclusion from the trial court as to whether the blanks relating to the name of the plaintiff corporation and its business of distribution of auto body supplies were already filled in when the restrictive agreement was executed on April 1, 1971 by Mr. Bader and defendant Green. We defer to the trial court's finding in that regard and accept the finding that the agreement was complete at the time of its execution by both parties. We therefore rule against defendant Green that there was an unauthorized alteration of the agreement.

Having found thus, we forebear an incursion into the law and consequences of executing an agreement containing blank spaces and whether Mr. Bader had implied authority to fill in such spaces to complete the agreement in accordance with the intent of the parties.

 We have disposed of the basic issue in this case as to whether the trial court erred in finding that the blank spaces had been filled in at the time the agreement was executed; there was no error. But defendant in his brief seems to allude to the issue of whether the agreement of April 1, 1971 signed by Mr. Bader could be ratified by the plaintiff corporation—Bader Automotive & Industrial Supply Co., Inc. which came into existence on May 26, 1971. After the execution of the agreement on April 1, 1971, defendant Green continued to work for the plaintiff corporation until September 15, 1973 and acknowledged its corporate existence. He knew that he was paid by the plaintiff corporation, and he received benefits from it, was familiar with its name and scope of business. As said in *Schneider v. Best Truck Lines, Inc.*, 472 S.W.2d 655, 659 (Mo.App.1971):

> "It is a well settled principle that '[w]here one contracts with a body assuming to act as a corporation or by a name distinctly implying a corporate existence, both parties in a suit upon the contract are usually estopped from denying such corporate existence.' [cites omitted]."

See also *Pacific Intermountain Express Co. v. Best Truck Lines, Inc.*, 518 S.W.2d 469 (Mo.App.1974). Further, even though the agreement was executed by the parties prior to plaintiff's formal corporate birth, it became the agreement of the plaintiff corporation after its formation and upon its adoption by the corporation. The fact that the agreement was signed by Mr. Bader, who at the time was the promoter and organizer of the plaintiff corporation and was subsequently its president, sole director and shareholder, was sufficient to bind the plaintiff corporation to the agreement and serve as ratification of the agreement made prior to the corporate existence, thus dispelling any argument of defendant Green that the plaintiff corporation had not ratified the agreement. *Schmidt v. Morival Farms, Inc.*, 240 S.W.2d 952 (Mo.1951).

The judgment is affirmed.

SIMEONE, P. J., and KELLY, J., concur.