DAVANE, INC., Plaintiff-Appellee, v. IVAN H. MONGREIG *et al.*, Defendants-Appellants.

Second District   No. 2—89—0227

Opinion filed January 31, 1990.

Joseph E. Fitzgerald, of Hinsdale, for appellants.

Walter J. O'Brien II, Angela Imbierowicz, and Madonna Muscarello, all of O'Brien & Associates, P.C., of Oak Brook Terrace, for appellee.

JUSTICE DUNN delivered the opinion of the court:

Defendants, Ivan and Geraldine Mongreig (Mongreigs), appeal from an order of the circuit court of Du Page County which granted the request of plaintiff, Davane, Inc. (Davane), for specific performance of an alleged contract for the sale of real estate. The Mongreigs argue that no contract existed because they withdrew prior to ratification by the principal, Davane, and because the evidence indicates their attorney did not approve it and the contract was contingent upon attorney approval. We reverse.

The following facts were brought out at trial. The Mongreigs own a 3½-acre parcel of property in Burr Ridge upon which a single-family residence is located. On January 20, 1987, Joan Smythe, a realtor who worked for Re/Max Elite in Hinsdale, visited the Mongreigs'

home. Mrs. Mongreig told her the property was for sale. Smythe discussed the property with John Damore, another real estate broker in her office. Damore told Smythe he knew a builder named David Gasaway who might be interested in buying the land. Damore then contacted Gasaway.

Gasaway met Damore and Smythe at a tavern in Willow Springs on the evening of January 22, 1987, in order to discuss the Mongreigs' property. That night, Gasaway signed a Du Page Board of Realtors standard residential real estate contract in which the listed buyer, Davane, offered to purchase the property for $265,000. Gasaway used the name Frank Klotz, his deceased grandfather, when he signed the offer, because he did not wish competing builders to know that the Gasaway family was interested in the property.

Smythe and Damore took the offer to the Mongreigs immediately thereafter. The Mongreigs refused to consider the offer, stating that they wanted $315,000 for the property and had recently rejected a $305,000 offer. Smythe and Damore then returned to the tavern and told Gasaway he would have to increase the offer. Gasaway then signed another standard residential real estate contract which listed Davane as the buyer and offered $306,000 for the land. Once again, Gasaway used the name Frank Klotz when he signed the offer.

The next morning, Smythe and Damore returned to the Mongreigs' home and presented the offer. The Mongreigs stated that they still wanted $315,000. Damore stated that if the Mongreigs wished to get that amount, they would need to show their good faith by signing a contract for $315,000 which he could take to the buyer. When the Mongreigs asked what Davane was, Damore stated it was a builder in Lemont. The Mongreigs expressed reluctance to sign, stating that they wanted their attorney to see the contract first. Mr. Mongreig then called his attorney, Robert Grossman, who was not able to see the Mongreigs until Monday, January 26, three days away.

Damore then told the Mongreigs he could put an attorney-approval clause in the contract. Damore stated that what he had in mind was a standard 304 rider issued by the Du Page Board of Realtors. This rider states that the buyer or seller's attorney has five days to approve or disapprove of the contractual terms, except for the price, closing date, or possession date. In the event of disapproval of any terms, the attorney must serve a notice upon the other party or his or her attorney stating which terms are not approved and containing suggested revisions of those terms. If the parties fail to agree to revisions of the disapproved terms within 10 business days, the contract is null and void.

According to Damore, he did not have a 304 rider with him at the time, but explained to the Mongreigs that their attorney could alter any terms except price, closing date, or possession date. The Mongreigs testified that Damore told them the contract would be null and void if their attorney did not approve it. Damore added a handwritten provision to the contract which stated, "Attorney approval with 5 days of contract." He also added some other terms which are not relevant to this appeal. Additionally, Damore crossed out the $306,000 price and wrote in a price of $315,000. The Mongreigs initialed the addition and changed terms and signed the contract. Damore then met Gasaway at a local country club and explained the changes to him. Gasaway contacted Damore later that afternoon and stated he would agree to the terms.

On the evening of January 23, 1987, Damore picked up the contract from Gasaway. Since Damore was leaving for vacation the next day, he gave the contract to another Re/Max realtor, Georgiann Wagner. Wagner took the contract to the Mongreigs the next day so they could show it to their attorney. The Mongreigs took the contract to the office of their attorney, Robert Grossman, on January 26.

Grossman testified that when he reviewed the contract he found it deficient in several respects. He noticed that the prospective purchaser failed to initial the price change and that the contract did not reveal how Frank Klotz was affiliated with Davane. The promissory note enclosed for the $11,500 did not contain any due date, according to Grossman. He testified that the Mongreigs stated they had been told by John Damore that the contract would be null and void if their attorney did not approve it.

On January 27, Grossman spoke to Wagner on the telephone. According to Grossman, he told Wagner that he would not approve the contract and suggested they draw up another one. Grossman brought the three aforementioned deficiencies to Wagner's attention. Grossman testified that he told Wagner any new contract should specify the status of Frank Klotz in Davane and mentioned a few minor terms which he wished to have added to any such contract.

Georgiann Wagner also testified about her January 27 conversation with Grossman. She stated that Grossman never asked who Frank Klotz was or expressed any reservations about the note. Grossman did tell her that his clients technically had an out because the buyer failed to initial the price change. He dictated an addendum with some minor terms he wished to have added to the agreement. Wagner stated she would type it up and have the purchaser sign it. Grossman stated he would recommend that his clients accept the contract.

Wagner then met David Gasaway in a bank parking lot and had him initial the addendum. The next morning, Gasaway went to the office of his attorney, Gerald Sheridan, in Wheaton. Sheridan then sent a letter to Grossman dated January 28, 1987, in which he stated that he understood Grossman had told Georgiann Wagner the previous day that the Mongreigs did not believe there was an enforceable contract because the buyer had not initialed the price change. The letter went on to state that if the Mongreigs persisted in this position, Davane would pursue any necessary legal remedies, including a suit for specific performance.

Sheridan spoke to Grossman on the telephone later that afternoon. Sheridan stated that Davane and the Mongreigs had a contract and if it was not carried out, Davane would file a specific performance action. According to Sheridan, Grossman stated that he did not approve the contract, and he pointed out some specific language in the document.

The evidence revealed that Grossman received two offers to purchase the property on January 27 or 28 for $320,000. One was from Philip Moser; the other was from Lee Fry Realty. Grossman testified that when he attempted to tell Mrs. Mongreig about these offers, she told him the property was off the market. Joan Smythe of Re/Max testified, however, that when she spoke to Mr. Mongreig on the evening of January 27, he told her they had received a $320,000 offer for the property, and Davane would have to submit a higher offer. Mr. Mongreig denied he said this to Smythe.

The January 23 agreement made the transaction contingent upon satisfactory soil testing. A company retained by David Gasaway performed soil tests on the property on January 30. Georgiann Wagner sent the Mongreigs a letter dated February 3, 1987, in which she stated the promissory note for the earnest money had been redeemed and a cashier's check for $11,500 from Davane had been deposited in the Re/Max Elite escrow account. Robert Grossman responded in a letter to Wagner dated February 5, in which he stated there was no contract because there had been no attorney approval.

Gerald Sheridan testified that he found out sometime after January 28, 1987, that the Gasaway family had not yet applied for articles of incorporation for Davane, although they had opened a checking account in that name. Sheridan told them they had better do so, and he prepared such an application, which was signed by Chester Gasaway, David's father, on February 13, 1987. Davane officially became incorporated on March 2, 1987. Davane's complaint against the Mongreigs was filed on March 12.

The trial judge determined that an enforceable contract for the sale of the Mongreig property existed and ordered specific performance. The judge also ruled that the Mongreigs would be estopped in any event from denying the enforceability of the January 23, 1987, agreement. The instant appeal ensued.

■ The Mongreigs argue that there was no contract because they withdrew prior to its ratification by Davane. A party who contracts with an unauthorized agent may withdraw from the contract at any time prior to the principal's ratification. (*La Salle National Bank v. Brodsky* (1964), 51 Ill. App. 2d 260, 267; Restatement (Second) of Agency §88 (1958).) Refusal to perform the obligations of an alleged contract constitutes a withdrawal. Restatement (Second) of Agency §88, comment a, at 226 (1958).

According to the Mongreigs, David Gasaway could not have been an authorized agent of Davane because Davane did not even exist on January 23, 1987. Davane argues that the Mongreigs are estopped from denying its corporate existence as of that date because they signed a contract in which "Davane, Inc." was listed as the buyer. Davane relies on the case of *Zimmerman Ford, Inc. v. Cheney* (1971), 132 Ill. App. 2d 871.

In *Zimmerman Ford*, defendant was sued on a retail installment contract and argued on appeal that plaintiff had failed to prove its corporate existence. The court held that defendant had waived this argument and then stated in *dicta* that defendant was estopped from denying plaintiff's corporate existence. (*Zimmerman Ford*, 132 Ill. App. 3d at 874.) The brief discussion of the estoppel issue in *Zimmerman Ford* fails to discuss the recognized relationship between the principle of estoppel to deny corporate existence and the doctrine of *de facto* corporations.

■ An organization which is not technically a corporation because of the failure to meet some statutory requirement will be recognized as a *de facto* corporation if there is a valid law under which it may be organized, a good-faith effort to organize under the law, a colorable or apparent compliance with the law, and if the organization is a user of corporate powers. (*Inter-Ocean Newspaper Co. v. Robertson* (1920), 296 Ill. 92, 94.) A person who contracts with an entity while the entity is acting as a *de facto* corporation, and who contracts with it as an organized corporation, is estopped from denying its corporate status at the time the parties entered into the agreement. (*Imperial Building Co. v. Chicago Open Board of Trade* (1908), 238 Ill. 100, 110.) If the organization was not a *de facto* corporation, however, there is no estoppel to deny its corporate existence. See *Hossack v.*

*Ottawa Development Association* (1910), 244 Ill. 274, 294.

■ Here there was no colorable or apparent compliance with the statutory formalities for creating a corporation. As of January 23, 1987, the date of the alleged contract, Davane had not even filed its articles of incorporation pursuant to section 2.10 of the Business Corporation Act of 1983 (Ill. Rev. Stat. 1987, ch. 32, par. 2.10). Davane did not do so until February 13, 1987. Thus, Davane could not be considered a *de facto* corporation prior to February 13, 1987, and the Mongreigs are not estopped from denying its corporate existence prior to that date.

■ The Mongreigs are correct in asserting that David Gasaway was an unauthorized agent as of January 23, 1987, since the alleged principal did not even exist at the time. Gerald Sheridan's letter of January 28 to Robert Grossman and Grossman's letter of February 5 to Georgiann Wagner made it clear that the Mongreigs expressed their belief prior to February 13, the earliest date upon which Davane could be recognized as a *de facto* corporation, that they did not have an agreement with Davane. These renunciations of any purported contractual obligations constituted withdrawal from any possible contract with Davane before Davane even came into existence and, thus, before it could possibly ratify the agreement. Accordingly, there was no enforceable contract between the parties. For the above reasons, the trial court's conclusion to the contrary was against the manifest weight of the evidence, as was the court's ruling that the Mongreigs were estopped from denying the enforceability of the contract.

Because of our disposition of this matter, we need not consider the Mongreigs' argument that there was no contract because the evidence indicates their attorney never approved it. For the above reasons, the judgment of the circuit court of Du Page County granting specific performance to Davane is reversed.

Reversed.

UNVERZAGT, P.J. and McLAREN, J., concur.