## P.D.2000, L.L.C., Plaintiff/Respondent,

v.

## FIRST FINANCIAL PLANNERS, INC., Defendant/Appellant.

### No. 75143.

Missouri Court of Appeals,
Eastern District,
Division One.

June 22, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 29, 1999.

Albert Shawe Watkins, Richard B. Hein, St. Louis, for appellant.

Gary M. Siegel, Howard A. Wittner, Clayton, for respondent.

ROBERT E. CRIST, Senior Judge.

Defendant, First Financial Planners, Inc., appeals from the judgment entered by the trial court in favor of plaintiff, P.D.2000, L.L.C., after a jury verdict, in a breach of contract action. We affirm.

The relevant facts are that Ray Sulka, a resident of California, developed information systems and implemented computer technology advancements for individuals and companies in various industries. He was also a financial planner, who in February 1996 became a registered agent of defendant, First Financial Planners, Inc. (hereinafter FFP), a Missouri corporation founded and controlled by Roy Henry. In June 1996, Sulka and Henry entered into an agreement for Sulka to evaluate FFP's computer needs and to structure a plan for technological improvements. Sulka fully performed under this agreement and submitted a report to Henry.

On July 21, 1996, Sulka and Henry executed a second agreement on behalf of their respective corporations, P.D.2000, L.L.C. (hereinafter P.D.2000) and FFP. Henry signed as president of FFP and Sulka signed as president of P.D.2000. The agreement was titled "INDEPENDENT CONTRACTOR AGREEMENT" and provided for P.D.2000 to develop a security system and a financial planning system for FFP as well as an intranet

communication structure for FFP branch offices and certain clients (hereinafter the contract). The contract was for a term of five years, commencing on September 1, 1996 and ending on August 31, 2001. The contract provided that P.D.2000 would receive $25,000.00 per month for services performed and P.D.2000 would pay all expenses incurred in performing the contract out of that amount. The contract described the ways in which FFP could terminate the contract as follows:

7. *Termination*

A. This Agreement may be terminated by [FFP] as follows:

i. If [P.D.2000] is unable to provide the consulting services by reason of death.

ii. Breach or default of any obligation of [P.D.2000] pursuant to ... Confidentiality [section], of this Agreement.

iii. Company payes [sic] [P.D.2000] total lump sum of one year monthly fees in advance.

The contract stated that FFP "acknowledges that [P.D.2000] was in the process of forming an LLC in the state of Nevada."

Sulka retained the services of a company in Nevada for the purpose of incorporating P.D.2000 in that state. Sulka moved to St. Louis, Missouri, signed a one-year lease on an apartment, and began performing services for FFP immediately after entering into the contract in July 1996. FFP made two payments under the contract, making the checks payable to "Sulka West." On September 26, 1996, FFP terminated the contract with P.D.2000 without paying the termination fee.

On October 7, 1996, the articles of incorporation for P.D.2000 were filed with Nevada. On that same date, P.D.2000 executed a formal ratification of Sulka's pre-incorporation activities.

P.D.2000 then brought the present action against FFP for breach of contract and sought the termination fee pursuant to the contract. At trial, FFP's defense was that P.D.2000 did not have the capacity to enforce the contract. The jury found in favor of P.D.2000 and assessed damages at $300,000.00. The trial court entered judgment in accordance with the verdict in the amount of $359,744.80, which consisted of damages plus court costs and prejudgment interest.

In its sole point on appeal, FFP contends the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict, because P.D.2000 lacked the capacity to contract or to enforce the contract. It argues that the Restatement (Second) of Agency section 88 (1958) precludes an action on a pre-organization agreement by a subsequently formed entity, i.e. P.D.2000, when the other party to the contract, i.e. FFP, has withdrawn from the contract prior to its ratification.

■ The allegations of error will be considered together. An appeal from the denial of a motion for judgment notwithstanding the verdict is treated the same as an appeal from the denial of a motion for directed verdict. *Allen v. Watson,* 935 S.W.2d 322, 326 (Mo.App. S.D.1996). In its review this court accepts the evidence and reasonable inferences favorable to the verdict. *Id.* A trial court may sustain a defendant's motion for directed verdict only when the facts in evidence and the reasonable inferences which can be drawn therefrom are so strongly against a party that no room is left for reasonable minds to differ. *Id.* Likewise, a motion for judgment notwithstanding the verdict should be granted only when the evidence and reasonable inferences to be drawn therefrom are so strong against the prevailing party that there is no room for reasonable minds to differ. *Id.*

■ *Bader Automotive & Industrial Supply Co. Inc., v. Green,* 533 S.W.2d 695 (Mo.App.1976), is on point. In that case, in 1971, plaintiff, Richard Bader and defendant, Glynn Green, entered into an employment agreement containing a covenant not to compete. *Id.* at 696–697. At the time the agreement was executed, Bader had not incorporated his business and signed the agreement in his own name.

*Id.* at 697. Green worked as an employee selling auto body supplies for Bader until 1973 and received his income on checks issued by the corporation during that time. *Id.* at 697–698. Green attempted to avoid the terms of the agreement, particularly the covenant not to compete, by claiming that the corporation could not ratify a contract that had been executed before the date of incorporation. *Id.* at 699. This court responded, "It is a well settled principle that '[w]here one contracts with a body assuming to act as a corporation or by a name distinctly implying a corporate existence, both parties in a suit upon the contract are usually estopped from denying such corporate existence.'" *Id.* (quoting *Schneider v. Best Truck Lines, Inc.,* 472 S.W.2d 655, 659 (Mo.App.1971)).

Here, after it was incorporated, P.D. 2000 ratified the contract between Henry and Sulka. The fact that the contract was signed by Sulka, who was the organizer of the corporation was sufficient to bind the corporation. *See Bader,* 533 S.W.2d at 699. Thus, although the contract was executed by the parties prior to P.D.2000's formal corporate birth, it became the contract between FFP and P.D.2000 after formation of the corporation and upon its adoption by the corporation. *See id.*

■ FFP relies on *Davane, Inc. v. Mongreig, et al.,* 193 Ill.App.3d 636, 140 Ill.Dec. 573, 550 N.E.2d 55 (Ill.App.2nd Dist.1990), for the proposition that if a party enters into a contract with an agent, who is unauthorized because its principal does not exist at the time of contracting, that party may withdraw from the contract. In *Davane,* the defendants entered into a contract for the sale of real estate with the plaintiff, Davane, Inc. (hereinafter Davane). *Id.* at 56. The contract was signed by David Gasaway, a builder, who used the name Frank Klotz when he signed. *Id.* Davane had not yet applied for the articles of incorporation when the contract was signed. *Id.* at 58. The defendants renounced the agreement before Davane came into existence and before it could ratify the agreement. *Id.* at 59. In

denying plaintiff specific performance for the sale of the land, the court reasoned that because Davane was not recognized as a corporation at the time of contracting, defendants were entitled to withdraw prior to ratification of the agreement. *Id.*

*Davane,* however, is distinguishable from the case before us. Here, unlike the defendants in *Davane,* FFP had full knowledge of the corporate status of P.D. 2000 at the time of contracting. FFP was aware that P.D.2000 was not incorporated and the contract specifically stated that P.D.2000 was in the process of incorporating in Nevada. FFP also knew that Sulka was the agent of P.D.2000 when he signed the contract and that he would be the person to perform services under the contract. In addition, similar to the employment situation in *Bader,* P.D.2000 had partly performed under the contract when FFP repudiated it. Sulka began working pursuant to the contract immediately after its execution and was issued two paychecks by FFP. He moved to St. Louis and signed a one-year lease for an apartment. He took the requisite steps to incorporate in Nevada. In contrast, in *Davane,* when the defendants withdrew, the contract was executory in nature because title to the property had not been transferred. Thus, we find the *Davane* decision is not controlling.

Given the facts of this case, FFP is estopped to deny the existence of P.D. 2000. Because we decided this case on the basis of the doctrine of estoppel, we need not address the issue of whether to adopt Restatement (Second) of Agency section 88 (1958). The trial court did not err in refusing to grant FFP's motions for directed verdict and for judgment notwithstanding the verdict.

The judgment of the trial court is affirmed.

JAMES A. PUDLOWSKI, P.J. and CLIFFORD H. AHRENS, J.: Concur.