ROBERT C. KNAUS *et al.*, Plaintiffs-Appellants, v. DELVIN DENNLER *et al.*, Defendants-Appellees.

Fifth District   No. 5—87—0162

Opinion filed June 8, 1988.

Don Cary Collins, of Belleville, for appellants.

James McGlynn and Michael L. McGlynn, both of McGlynn & McGlynn, of Belleville, for appellee Virginia Woolard.

Roger S. Murphy, of Belleville, for other appellees.

JUSTICE WELCH delivered the opinion of the court:

Plaintiffs appeal from a judgment of the circuit court of St. Clair County dismissing their complaint seeking proportionate sharing of expenses between owners of adjoining lakefront properties for the repair of the dam which retains the lake around which the properties are situated.

In March 1982, plaintiffs purchased real property known as Lot 1 of the Fifth Addition to Lakewood Place. The lot purchased by plaintiffs abutted a lake and included approximately one-half to two-thirds of the earthen dam which retained the lake. The remaining portion of the dam was situated on the lakefront property adjoining plaintiffs' property immediately to the south.

In June 1982, plaintiffs discovered one or two small holes developing in the portion of the dam situated on their property. Plaintiffs were aware at the time of purchase that their lot included a portion of the earthen dam, but, according to the record, plaintiffs made no inquiry as to the condition of the dam; nor did the previous owner disclose at any time prior to the closing of the sale that the dam had required repairs for leakage during the seller's ownership.

Prompted by interest in repairing the leaking dam, plaintiffs contacted the United States Department of Agricultural Soil Conservation and an independent excavating contractor. At plaintiffs' request, the excavating contractor visited plaintiffs' property in July 1982 and inspected the dam. Later in July or early in August of 1982, a heavy rain resulted in an enlarging of the holes in the dam. Again the excavating contractor inspected the dam at plaintiffs' request. On August 9 or 12, 1982, plaintiffs arranged a meeting with other owners of property abutting the lake so that a decision could be made as to what procedures should be taken to repair the dam. Although the record is replete with conflicting testimony pertaining to what transpired at the meeting and whether a unanimous decision among lakefront property owners was attained, repairs began at plaintiffs' request on August 18, 1982. A second property owners' meeting followed on August 19, 1982, at which, according to the record, differences of opinion resulted in the meeting becoming "heated."

At the second meeting, the excavator recommended that the entire dam be reconstructed so as to comply with the accepted standards for dam construction and maintenance. The Smedleys, owners of the portion of the dam not owned by the Knauses, objected to their portion of the

dam being reconstructed and advised the excavator to stay off their property. The excavating work, reconstructing only the portion of the dam situated on the Knaus property, was completed on September 11, 1982. The total cost for the excavating was $11,920.51. An additional $1,360 was expended for landscaping and repairs necessary to cosmetically finish the reconstructed portion of the dam and restore the asphalt driveway and surrounding area which had suffered superficial damages resulting from the traverse of large trucks transporting excavating equipment to and from the jobsite.

The underlying lawsuit was filed originally on June 6, 1983, seeking to recover from the named defendants proportionate shares of the expenses incurred in reconstructing the dam. While some lakefront property owners had contributed money to help cover the costs, the defendants had refused to do so. On July 7, 1983, plaintiffs' complaint was dismissed on motion of defendant Virginia Woolard, and leave to amend was granted. Plaintiffs' first amended complaint followed on July 28, 1983. On September 28, 1983, the trial court denied defendants' motion to dismiss plaintiffs' first amended complaint as to counts I, II, and III, and allowed the motion as to count IV. In the order entered by the court on September 28, 1983, plaintiffs were allowed to amend count IV by interlineation, and defendants were ordered to file responsive pleadings. In addition to responsive pleadings, defendants Frank and Shirley Smedley filed a counterclaim seeking to recover damages for trespass alleged to have occurred during the reconstruction of the dam.

Following a bench trial on November 14, 15, 28, and 29, 1985, the trial court allowed all parties to file memoranda of law in support of a judgment in their favor, and plaintiffs were allowed to amend counts I, II, and III of their first amended complaint to conform the pleadings to the proof. The proposed amendment to conform count IV of plaintiff's first amended complaint to the proof was denied as the court found the proposed second amended count IV nearly identical to the previous rendition. On April 11, 1985, the court dismissed counts I, II, and III of plaintiffs' second amended complaint, and entered judgment in favor of defendants.

Plaintiffs filed their post-trial motion on May 13, 1985. The trial court denied plaintiffs' post-trial motion, and plaintiffs appealed to this court. On October 21, 1986, we dismissed plaintiffs' appeal as there was not yet a final and appealable order. On February 9, 1987, the trial court entered judgment on the counterclaim in favor of counterclaimants Frank and Shirley Smedley and awarded counterclaimants $130 plus costs. The judgment of the trial court being final, plaintiffs brought this appeal contending that their complaint stated a valid cause of action and the trial court should have entered judgment in their favor.

■ In count I of plaintiffs' second amended complaint it was pleaded that the lake and dam in question constituted a part of a mutual drainage system and, therefore, plaintiffs had a common law right to proportionate sharing between members of the mutual drainage system for the costs of repairs. "Drainage system" is defined in the Illinois Drainage Code as "the system by which lands are drained or protected from overflow or both and includes drains, drainage structures, levees and pumping plants." (Ill. Rev. Stat. 1985, ch. 42, par. 1—2(g).) The purpose of the Illinois Drainage Code is to ensure that waters will not accumulate on higher land as a result of the acts or omissions of landowners of lower elevation. (*Bellatti v. Allspach* (1967), 79 Ill. App. 2d 44, 47-48, 222 N.E.2d 909, 911.) In the present case, the dam is a man-made barrier intended to prevent the natural flow of water, thereby creating a lake. Because the lake was created for the benefit of landowners surrounding the lake, and the lake is voluntarily accepted by any party purchasing property which abuts the lake, the protection provided by the Illinois Drainage Code is unnecessary under these facts and, therefore, the Code does not apply. For this reason, we find that this count was properly dismissed, and it is unnecessary to discuss whether plaintiffs were entitled to proportionate sharing of expenses under this count of the complaint.

■ Counts II and III of plaintiffs' complaint claim that the defendants breached an implied contract. In count II, the alleged implied contract arose out of the common law riparian rights of property owners. Under common law, riparian rights of property owners abutting the same body of water are equal, and no such property owner may exercise its riparian rights in such a manner so as to prevent the exercise of the same rights by other similarly situated property owners. (*Bouris v. Largent* (1968), 94 Ill. App. 2d 251, 236 N.E.2d 15.) Therefore, according to plaintiffs, there existed an implied contract in law between the plaintiffs and defendants to maintain the lake, including the dam, so that all lakefront property owners could continue exercising their riparian rights.

■ Count III alleged that an implied contract arose out of language contained in the plat depicting the lakefront property situated around the lake here in issue. The plat states, *inter alia*, "[t]hat the purchaser of any lot in this subdivision shall acquire the fee simple title to the entire area of the lot. However, the right to use that part of the area of said lot comprising the lake area (*i.e.*, within the 'Water Line'), shall be reserved for the joint use of all the present or future owners of lots in this subdivision." Therefore, according to plaintiffs, there existed an implied contract between plaintiffs and defendants to maintain the dam of the lake and be mutually responsible for costs incurred for any necessary repairs. We find neither count II nor count III sufficient to state a cause of action, and

therefore the trial court's dismissal of these counts was proper.

■ ■ Illinois courts recognize an action derived from the doctrine referred to as quasi contract, contract implied in law, or *quantum meruit*, the obligations of which may be enforced independent of any agreement between the parties or of their personal intentions. (*Rutledge v. Housing Authority* (1980), 88 Ill. App. 3d 1064, 411 N.E.2d 82.) An implied contract is one which reason and justice dictate and is founded on the equitable doctrine of unjust enrichment. (*County of Champaign v. Hanks* (1976), 41 Ill. App. 3d 679, 353 N.E.2d 405.) Recovery under an unjust enrichment theory requires a showing that the defendant has voluntarily accepted a benefit which it would be inequitable for him to retain without payment since the law implies a promise to pay compensation when value of services are knowingly accepted. *Premier Electrical Construction Co. v. La Salle National Bank* (1984), 132 Ill. App. 3d 485, 496, 477 N.E.2d 1249, 1257.

In the present case, the record indicates that plaintiffs attempted to enter into a written agreement with the defendants binding defendants to pay a portion of the cost of repairing the dam. Defendants refused to enter such an agreement, and trial testimony indicates that defendants Smedley informed plaintiffs prior to the initiation of repairs that defendants Smedley did not consider themselves responsible for the cost of repairs performed on plaintiffs' property. Defendants Dennler refused to sign any agreement proposed by the plaintiffs and became upset with the extensiveness of repairs once undertaken. Defendant Woolard did not express objection to the repairs, but did not sign the agreement offered by plaintiffs, and stated that she was not in a position financially to contribute to the cost of repairs.

■ Because plaintiffs instructed that repairs be commenced notwithstanding defendants' opposition and lack of willingness to enter the agreement proposed by plaintiffs, we are unable to find that defendants voluntarily accepted a benefit, as required to establish unjust enrichment under *Premier Electrical Construction Co. v. La Salle National Bank* (1984), 132 Ill. App. 3d 485, 477 N.E.2d 1249. Instead, because the benefit was conferred in the face of opposition and disinterest, it appears to fall into the category of "officiously" or "gratuitously" conferred benefit for which quasi-contractual relief is not available in Illinois. *Plastics & Equipment Sales Co. v. DeSoto, Inc.* (1980), 91 Ill. App. 3d 1011, 1017, 415 N.E.2d 492, 498.

■ In count IV, plaintiffs alleged that defendants breached an oral agreement to pay proportionate shares of the cost for dam repairs. This oral agreement, according to plaintiffs, was entered into during the first of two lakefront property owners' meetings concerning the dam. In the

alternative, plaintiffs' brief asserts that if there was not an oral agreement, such an agreement was implied in fact. On review, the record is replete with conflicting testimony as to whether the parties entered into such oral agreement, and nowhere do we find undisputed testimony from which an implied in fact contract may reasonably be inferred. In determining the weight to be afforded conflicting testimony, the trial court is in a far better position than this court to assess the credibility of the witnesses. (*In re Marriage of Eltrevoog* (1982), 92 Ill. 2d 66, 440 N.E.2d 840.) Because the trial court is in a better position to weigh the testimony adduced at trial, the finding of the trial court will stand as we do not find it to be against the manifest weight of the evidence. *Scheduling Corp. v. Massello* (1987), 151 Ill. App. 3d 565, 503 N.E.2d 806.

■ Finally, plaintiffs contend that the trial court's judgment in favor of defendants Smedley in the amount of $130 against the plaintiffs for trespass was against the manifest weight of the evidence. Trespass is the invasion of exclusive possession and physical condition of land. (*Colwell Systems, Inc. v. Henson* (1983), 117 Ill. App. 3d 113, 116, 452 N.E.2d 889, 892.) In the present case, plaintiffs hired the excavator to repair the dam, and in repairing the dam the excavator's machinery invaded the physical condition of defendants Smedley's property. Plaintiffs' defense based on consent is of no merit as plaintiff Diane Knaus testified that shortly after the excavation began defendant Frank Smedley stated that he did not want the excavator on the Smedley property. Further, plaintiffs' defense relying on the Illinois Drainage Code (Ill. Rev. Stat. 1985, ch. 42, par. 2—11) is of no avail as we have previously determined that the Illinois Drainage Code is not applicable to the instant case. Therefore, we find that the trial court's finding in favor of defendants Smedley on their counterclaim for trespass damages is not against the manifest weight of the evidence and will stand.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is hereby affirmed.

Affirmed.

HARRISON, P.J., and LEWIS, J., concur.