A.A. STORE FIXTURES COMPANY, INC., n/k/a Royal Industries, Inc., Plaintiff-Appellant and Cross-Appellee, v. GORDON G. SHOPIRO, Defendant-Appellee and Cross-Appellant.

First District (3rd Division)   No. 1—91—3339

Opinion filed March 8, 1995.—Rehearing denied June 23, 1995.

Richard Grossman, of Chicago, for appellant.

Cantwell & Cantwell, of Chicago (Stephen F. Boulton and Peter A. Gaido, of counsel), for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, A.A. Store Fixtures Company, Inc. (A.A.), filed this action against defendant, Gordon Shopiro, for judgment by confession. The case was dismissed. Plaintiff now appeals. We reverse and remand.

Plaintiff makes the following allegations on appeal: (1) that the trial court erred in applying the affirmative defense of *nul tiel* corporation because it had never been raised by defendant; (2) that the trial court's finding that the defense of *nul tiel* corporation had been raised by defendant was not supported by the record; (3) that the trial court erred by refusing plaintiff's request to amend its pleadings and by refusing plaintiff's offers of proof; (4) that the trial court erred by refusing to apply the doctrine of estoppel; and (5) that the court's decision should be reversed to the extent that it relied on plaintiff's name change in dismissing the case.

This appeal arises out of three consolidated actions brought before the trial court concerning a dispute surrounding the installation of kitchen, bar and restaurant facilities located at 5498 South Hyde Park Boulevard in Chicago, Illinois, in preparation for the opening and operation of Orly's Restaurant. Two actions, filed as numbers 81 M1 4832 and 81 CH 7623, were brought by plaintiff against defendant's son David Shopiro and the American National Bank and Trust Company of Chicago, as trustee under trust number 46755, the land trust which owned the premises leased by Orly's, Inc.

(the premises). The present appeal is derived from complaint number 81 L 15531, an action for judgment by confession to obtain funds promised in a note and guaranty signed by defendant, given in exchange for remodeling the premises.

Defendants subsequently filed answers and counterclaims against plaintiff in each of the above suits. Defendants also filed third-party complaints against Ability and A.A., as well as their principals, Irving Naditch and Richard Amend. In said pleadings, defendants alleged that plaintiffs failed to perform their contracts to supply labor, services and materials necessary for the opening of defendant's restaurant.

In the present case, the court entered a judgment upon the confession. Defendant filed a motion to open the judgment on November 24, 1981, which was granted. On March 1, 1985, the trial judge set the case on trial assignment call for March 21, 1985. On March 21, 1985, the trial judge dismissed the case for want of prosecution (DWP). The case was later reinstated and set for trial on April 7, 1986; however, no trial took place on that date. On or about June 7, 1987, David Shopiro filed a petition for bankruptcy with the United States Bankruptcy Court. David Shopiro was granted a discharge by the bankruptcy court on or about April 4, 1988.

On November 19, 1987, plaintiff filed a motion for summary judgment. On June 14, 1988, an order of summary judgment was entered in favor of plaintiff and against defendant in the amount of $59,253.67. On December 9, 1988, plaintiff filed a citation to discover the assets of defendant. Defendant later moved to quash plaintiff's citation to discover assets and to vacate the summary judgment order of June 14, 1988.

On March 27, 1989, the trial court held that the June 14 summary judgment order was not final with respect to defendant because the order did not dispose of all of the parties and pending claims. The motion to vacate the order of June 14, 1988, was transferred to another judge for further proceedings. On March 30, 1989, after defendant's motion to vacate was transferred and argued, the trial court set the matter for a hearing on May 8, 1989. On May 10, 1989, the trial court vacated the June 14 order and the cause was returned to the trial call for assignment.

On November 14, 1990, plaintiff filed a motion to set the case for trial and/or a finding that the case is properly brought before the court as an active case. The trial court vacated the prior DWP order and set the case for trial on January 3, 1991.

On November 27, 1990, however, the case was DWP'd again. On January 23, 1991, plaintiff filed a motion to vacate the November

DWP order. On March 6, 1991, defendant made a special and limited appearance, due to want of personal jurisdiction, and moved to dismiss plaintiff's motion to vacate the dismissal order entered on November 27, 1990. On March 14, 1991, the court granted defendant's motion and dismissed plaintiff's motion to vacate the dismissal order of November 27, 1990.

On May 3, 1991, the parties entered into an agreed order to vacate the March 14, 1991, dismissal order. Defendant's motion to dismiss plaintiff's motion to vacate the dismissal order of November 27, 1990, was then set for a hearing on July 2, 1991. On June 25, 1991, the trial court held that plaintiff's motion to vacate the DWP order entered on November 27, 1990, constituted a section 2—1401 petition (Ill. Rev. Stat. 1991, ch. 110, par. 2—1401). The court then required plaintiff to give defendant notice pursuant to section 2—1401 of the Code of Civil Procedure. On July 11, 1991, the matter was set for a hearing for August 8, 1991. On August 8, 1991, the hearing was continued until August 13. On August 14, 1991, the DWP order of November 27, 1991, was vacated and the cause was set for a trial on September 10, 1991.

After numerous motions to dismiss the case and motions to vacate the DWP orders, the trial began on September 19, 1991. At the commencement of trial, defendant presented a series of motions to the court. Defendant's initial motion for a change of venue was denied and is not part of this appeal. Defendant's second motion was a motion to dismiss on grounds of lack of subject matter jurisdiction. Defendant argued that the March 1985 dismissal acted to remove the jurisdiction of the trial court to hear the case. In support of its position, defendant presented the affidavit of Orrin Rotman, attorney for defendant during 1988, which stated that while representing defendant, he was unaware that the March 1985 dismissal had never been vacated. The court refused to consider the affidavit and to file it in the record. Defense counsel objected to the failure to include the affidavit in the court record.

On September 19, 1991, plaintiff dismissed Orly's, Inc., and David Shopiro as defendants. Thereafter, the court heard argument on defendant's motion for leave to amend the pleadings to co-adopt the counterclaim and third-party complaint filed by David Shopiro in case number 81 L 15531, and to add affirmative defenses. Defendant argued that because of the dismissal orders entered in the case, the last of which was not lifted until August of 1991, defendant did not have substantial opportunity to amend in preparation for trial. Defendant also argued that prejudice was not present because the claims had been on file for 10 years. The court denied the motion on the

grounds that to allow amendment at trial 10 years after the initial pleadings would constitute "an imposition on the resources of the judicial system."

The next item considered was the Rule 237 notice (134 Ill. 2d R. 237) served upon plaintiff by defendant. The trial court ordered compliance with the Rule 237 notice, including the request for corporate minutes and specified records of A.A. and Ability.

On September 20, 1991, the trial court conducted an additional review of the Rule 237 notice. Plaintiff tendered the minute book of A.A. and Ability to defendant. The following colloquy occurred during the trial:

"DEFENSE COUNSEL: In that line, Your Honor, I would just like a representation from Mr. Grossman that the A.A. minute book which has been presented is the complete book. I took a look at it and the last corporate meeting in that book was on January 13, 1947.

THE COURT: All right. Let's—that's a good point. Let's stop and take a look at the book.

DEFENSE COUNSEL: Now, if the last corporate meeting was in January, that's fine.

THE COURT: Let's find out. You are raising a good point.

DEFENSE COUNSEL: We have one here from 1964. I will give you what we have, Your Honor.

\* \* \*

PLAINTIFF: The last entry in the bound pages is 1948.

DEFENSE COUNSEL: January, 1948.

DEFENSE COUNSEL: Sorry, Your Honor, I may have misspoke.

THE COURT: That's 43 years ago.

PLAINTIFF: And the last—we have a special meeting of the board of directors in 1964 and we have other documents amending the articles from 1979.

THE COURT: Where are the corporate minutes for the last years?

\* \* \*

THE COURT: Counsel for the plaintiff, if we don't have any, I am going to be on the phone to the Secretary of State. You are going to be dissolved this afternoon and there isn't going to be any plaintiff's case on this note by 4:00 o'clock today.

\* \* \*

THE COURT: Do you have anything for Item 2, 1980 through the present for Ability?

DEFENSE COUNSEL: Your Honor, I don't see one minute in that book outside of a subscription agreement.

THE COURT: Is this Item 2, Ability?

DEFENSE COUNSEL: We are talking about the Ability book, Your Honor. There is not even a corporate minute in there. These things are total shells. The plaintiff is a fraud.

\* \* \*

THE COURT: The last minutes for A.A. which is the plaintiff in the L case, 1948.

DEFENSE COUNSEL: And now we are informed that they have changed their name, Your Honor, and the plaintiff hasn't been changed and there is no amendment or anything else.

PLAINTIFF: [A.A.] is a separate entity which is owned by Royal Industries. [A.A.] has a separate—

THE COURT: I don't know that anybody is a separate entity owned by anybody. All I see is shell games here. I don't like that. I don't think that's the intent of the Business Corporation Act in Illinois. I don't think that's an honest disclosure of the status of the parties and that's what I think we should be talking about.

PLAINTIFF: Judge, can I say this? The fact that this corporation may not have kept meticulous records for their minutes—

THE COURT: I'm not interested in a word that's misspelled. I'm talking about 43 years with no minutes. Please don't talk meticulous. There isn't anything to be meticulous or unmeticulous."

Despite plaintiff's earlier representation that it had complied with defendant's Rule 237 request by producing its corporate minute books, plaintiff later represented to the trial court that it did not have the minutes for A.A. and would "have to call a succession of lawyers to see whether they have them." Thereafter, the following colloquy occurred:

"THE COURT: Why wasn't that done?

PLAINTIFF: Because, Your Honor, to be frank with you, we found [A.A.] corporate minute books last night at about midnight and, you know, we didn't know what was in there.

THE COURT: I have said all I am going to say. You know my position on this issue. You certainly haven't complied with the 237. This case is in deplorable shape to say the least."

The court ultimately found that plaintiff had failed to establish its corporate existence under the doctrine of *nul tiel* corporation. The court refused to allow plaintiff to amend its pleadings and respond to the *nul tiel* corporation defense and refused plaintiff's offers of proof regarding its activities or other documents in the corporate minute book tending to show that plaintiff had acted as a *de facto* corporation. The trial court also dismissed plaintiff's cause of action and entered a judgment for defendant. Plaintiff now appeals.

■ First, defendant argues that the September 1991 trial should

never have occurred because the court had no jurisdiction after the March 21, 1985, dismissal. Plaintiff's motion was not a section 2—1401 motion, nor was it required to be.

" '[L]itigants may revest a court which has general jurisdiction of the matter with both personal and subject matter jurisdiction over the particular cause after the 30-day period following judgment during which post-judgment motions must ordinarily be filed. \*\*\*

In order for the rule to apply, the parties must actively participate without objection in proceedings which are inconsistent with the merits of the prior judgment.' " (*Elmore v. Elmore* (1991), 219 Ill. App. 3d 61, 64, 580 N.E.2d 619, 621-22, quoting *People v. Kaeding* (1983), 98 Ill. 2d 237, 240-41, 456 N.E.2d 11, 14.)

The doctrine of revestment provides that "all further proceedings upon the merits of a previously dismissed action are inconsistent with a prior order dismissing the action, it follows that any further proceeding upon the merits of a cause operates to nullify the order of dismissal." (*Gentile v. Hansen* (1984), 131 Ill. App. 3d 250, 255, 475 N.E.2d 894, 897-98.) A petition to vacate a dismissal order is not strictly necessary. (*Gentile*, 131 Ill. App. 3d at 255, 475 N.E.2d at 897-98.) The doctrine of revestment applies to actions which are dismissed for want of prosecution. (*Gentile*, 131 Ill. App. 3d at 255, 475 N.E.2d at 897.) Conduct which is inconsistent with the dismissal order is any which can be reasonably construed as an indication that the parties do not view the order as final and binding. *Gentile*, 131 Ill. App. 3d at 255, 475 N.E.2d at 897.

■ There is no question that a dismissal order was entered on March 21, 1985, followed by a motion to vacate. However, there were other proceedings in this case after March 21, 1985: Defendant answered requests to produce a bill of particulars; filed motions to vacate summary judgment; and filed motions to quash citation proceedings. Where defendant has participated to this extent, he has acted in a manner inconsistent with the dismissal order and the court was revested with jurisdiction. Although plaintiff did not file a motion to vacate under section 2—1401 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 2—1401), the court's entertainment of plaintiff's motion to set the case for trial and/or finding that this case was properly before the trial court as an active case resulted in revestment. Defendant's argument that revestment cannot occur unless the other party knowingly waives his rights appears nowhere in the case law.

■ Next, plaintiff contends that the trial court erred in striking its motion to amend its pleadings. First, we hold that the trial court

erred in invoking the doctrine of *nul tiel* corporation. The plea of *nul tiel* corporation denies the existence of an alleged corporation. (*Darwin Co. v. Sweeney* (1982), 110 Ill. App. 3d 331, 333, 442 N.E.2d 318, 320.) When a plea of *nul tiel* corporation is entered, a corporate plaintiff must prove its corporate existence. (*Darwin*, 110 Ill. App. 3d at 333, 442 N.E.2d at 320.) In *Davane, Inc. v. Mongreig* (1990), 193 Ill. App. 3d 636, 641, 550 N.E.2d 55, 58, however, we held that "[a]n organization which is not technically a corporation because of the failure to meet some statutory requirements will be recognized as a *de facto* corporation if there is a valid law under which it may be organized, a good-faith effort to organize under the law, a colorable or apparent compliance with the law, and if the organization is a user of corporate powers."

■ Section 7.75 of the Business Corporation Act of 1983 (BCA) has the following requirements:

"Each corporation shall keep correct and complete books and records of account and shall also keep minutes of the proceedings of its shareholders and board of directors and committees thereof; and shall keep at its registered office or principal place of business in this State, or at the office of a transfer agent or registrar in this State, a record of its shareholders, giving the names and addresses of all shareholders and the number and class of the shares held by each. A record of shareholders certified by an officer or transfer agent shall be competent evidence in all courts of this State." Ill. Rev. Stat. 1987, ch. 32, par. 7.75.

"An annual meeting of the shareholders shall be held at such time as may be provided in the by-laws or in a resolution of the board of directors pursuant to authority granted in the by-laws." Ill. Rev. Stat. 1987, ch. 32, par. 7.05.

In the present case, plaintiff's minute book had no record of regular shareholder or directors' meetings since January of 1948. In addition, the corporate records contained no annual reports. The office of the Secretary of State had a record that plaintiff had changed its name in 1986 to Royal; however, Royal's books contained no minutes, bylaws, or executed stock certificates. Plaintiff possessed neither documentation recording elections of officers or directors, nor documentary evidence that the subject promissory note, construction contracts and the filing of the underlying lawsuit had been voted upon, authorized or ratified.

■ While all of this evidence tends to prove that plaintiff was not functioning as a corporation, plaintiff's corporate existence was never questioned in the pleadings. In the present case, the trial court made a finding that the doctrine of *nul tiel* corporation had been raised by defendant. There was nothing in the record, however, to sustain the

court's finding because the pleadings are devoid of the defense. In the absence of the affirmative defense of *nul tiel* corporation, a plaintiff is not required to prove its corporate existence. A corporate litigant need not allege or prove its corporate existence. Where a defendant never makes a plea of *nul tiel* corporation, plaintiff is not obligated to prove its corporate existence. The trial court's finding of no standing based on this doctrine was error. (*Mid-City Industrial Supply Co. v. Horwitz* (1985), 132 Ill. App. 3d 476, 482-83, 476 N.E.2d 1271, 1276.) The trial court's finding and subsequent dismissal of the present case were therefore erroneous.

■ The trial court also erred by failing to allow plaintiff to respond to the defense of *nul tiel* corporation by amending its pleadings and by rejecting offers of proof tending to establish that plaintiff was in fact a functioning corporation. Although the allowance of amendments to pleadings is a matter committed to the trial court's sound discretion (*DiBenedetto v. County of Du Page* (1986), 141 Ill. App. 3d 675, 681, 491 N.E.2d 13, 18), the test of whether the court's discretion has been properly exercised is whether the amendment furthers the ends of justice. (*Tamalunis v. City of Georgetown* (1989), 185 Ill. App. 3d 173, 187, 542 N.E.2d 402, 411.) In the present case, the trial court abused its discretion in foreclosing plaintiff from responding to defendant's theory of the case by denying its request to amend its pleadings to answer the defense. The trial court also abused its discretion when it denied plaintiff's requests to make an offer of proof in the form of tax returns and directors' resolutions to show that the corporation had acted as a public entity. (See *In re Marriage of Passiales* (1986), 144 Ill. App. 3d 629, 640, 494 N.E.2d 541, 550.) An offer of proof was necessary in order to afford plaintiff an opportunity to defend itself against an allegation by defendant that was fatal to its case.

■ The trial court's dismissal of plaintiff's complaint should also be reversed because the court ignored Illinois case law which provides that parties are estopped from denying an entity's corporate existence under certain circumstances. "An organization which is not technically a corporation because of the failure to meet some statutory requirement will be recognized as a *de facto* corporation if there is a valid law under which it may be organized, a good-faith effort to organize under the law, and if the organization is a user of corporate powers." *Davane, Inc. v. Mongreig* (1990), 193 Ill. App. 3d 636, 640, 550 N.E.2d 55, 58.

We hold that plaintiff was a *de facto* corporation. Plaintiff organized, filed articles of incorporation, paid taxes and, according to the Secretary of State's office, was a corporation in good standing as of the date of the trial.

"A person who contracts with an entity while the entity is acting as a *de facto* corporation, and who contracts with it as an organized corporation, is estopped from denying its corporate status at the time the parties entered into the agreement." (*Davane, Inc.*, 193 Ill. App. 3d at 641, 550 N.E.2d at 58; see also *Imperial Building Co. v. Chicago Open Board of Trade* (1908), 238 Ill. 100, 110, 87 N.E. 167, 170-71.) There was no question that defendant contracted with plaintiff as a corporate entity. Defendant admitted in answers to discovery that he dealt with plaintiff as a corporation and signed the note and guaranty in question. Therefore, defendant is estopped from denying plaintiff's corporate status at the time it signed the note and guaranty. For the above reasons, the trial court erred in refusing to allow plaintiff to amend its pleadings.

■ Finally, plaintiff contends that the trial court's judgment should be reversed to the extent that it relied on plaintiff's name change from A.A. to Royal. We hold that the present case was not dismissed on the basis that the trial court believed that plaintiff's name change vitiated plaintiff's ability to bring suit.

The trial court's order dismissing this case is reversed and both plaintiff's claim and defendant's cross-claim are remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GREIMAN, P.J., and TULLY, J., concur.