1-00-0097         

)

YUGOSLAV-AMERICAN CULTURAL CENTER, INC., ) Appeal From The

) Circuit Court

Plaintiff-Appellee, ) Of Cook County

)

)

)

PARKWAY BANK AND TRUST COMPANY, Indiv. and ) 

as Trustee Under Trust Number 10066, VUCKO ) 

BARJACTAREVIC and  PETAR PAVLOVIC,      ) 

)

Defendants            )

)

(Branko Tupanjac, ) Honorable

) Sidney A. Jones III,

Defendant-Appellant). ) Judge Presiding.

JUSTICE REID delivered the opinion of the court:

This is not the first time these parties have been before this court.  A previous appeal, filed pursuant to Illinois Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) was decided by this court on June 30, 1997.  
  
Yugoslav-American Cultural Center, Inc. v. Parkway Bank & Trust Co.
, 289 Ill. App. 3d 728 (1997).  That opinion contains a lengthy and detailed discussion of the history of the parties.  The result in the previous appeal was that the warranty deed in trust challenged by plaintiff was deemed void and the deed was ordered canceled of record.  
Yugoslav-American
, 289 Ill. App. 3d at 740.

Subsequent to this court's ruling and following a stipulation of facts and the entry of orders of the trial court denying the right to file a third-party complaint, denying claims for a reduction of the restitution amount previously entered by the trial court and denying requests for certain discovery, the trial court entered judgment against Branko Tupanjac in the amount of $216,535.95 plus costs.  It is from those orders and judgment that Tupanjac now appeals.  We reverse and remand for the following reasons.

THE FACTS

This case previously proceeded to trial on the merits of counts I and IV of the Yugoslav-American Cultural Center's (YACC) amended complaint.  The YACC claimed that Petar Pavlovic, YACC president, and Vucko Barjactarevic, YACC secretary, fraudulently sold a building to a corporation controlled by Barjactarevic and Branko Tupanjac.  The amended complaint contained four counts, (1) to quiet title against Parkway Bank, as trustee under trust No. 10066, Parkway Bank, as mortgagee, and Tupanjac, (2) for breach of fiduciary duty against defendants Barjactarevic and Pavlovic, (3) fraud against  defendants Barjactarevic and Pavlovic, and (4) conspiracy to defraud against Tupanjac, Barjactarevic, Pavlovic and Parkway Bank, as trustee. 

During the pendency of the contested warranty deed in trust, Tupanjac received sums of money or other consideration as rents, tax escrow payments, and option or earnest money payments for the purchase of the property, commonly known as 3936 North Lincoln Avenue, Chicago, Illinois.  Tupanjac received $277,283 and paid $60,747.05 in real estate taxes on the property.  On October 10, 1991, Parkway Bank and Trust, as trustee under trust No. 10066, at the direction of Barjactarevic and Tupanjac, executed a $200,000 mortgage in favor of Parkway Bank.  This mortgage was secured by real estate commonly known as 3936 N. Lincoln Avenue, Chicago, Illinois.  The underlying mortgage was evidenced by a promissory note executed by Barjactarevic and Tupanjac, with the net proceeds of the loan being disbursed to the parties.  The initial promissory note matured on March 12, 1995, and was replaced by a new promissory note with a maturity date of March 12, 1998, executed by Tupanjac.  Of the $277,283 paid by the lessee/purchaser, $174,380.24 was disbursed at the sale of the property in 1996.  That disbursement was made at Tupanjac's direction in repayment of a loan previously made to him by Parkway Bank to discharge the indebtedness represented by the promissory notes.  Tupanjac sought a release of the recorded mortgage.  The YACC claimed that the warranty deed in trust was void and sought restitution.

Following a trial, judgment was entered against plaintiff and in favor of Parkway Bank, as trustee and mortgagee, and Tupanjac. The trial court found the deed valid.  The plaintiff appealed the judgment.  The appellate court reversed the judgment, declaring the warranty deed in trust null and void and cancelling it of record.  
Yugoslav-American
, 289 Ill. App. 3d at 740.  The trial court was reversed on the legal issue of lack of membership approval or ratification.   Though the case was reversed, it was not remanded.

While the case was still on appeal, on March 26, 1997, the circuit court dismissed the remainder of the case for want of prosecution (DWP).  Said dismissal was made as part of the trial court's call of the calendar because no party responded when the case was called.  Shortly thereafter, on May 27, 1997, counsel for the YACC moved to vacate the DWP.  They argued that the trial court should not have entered the order because part of the case was before the appellate court.  The trial court vacated the previous order as having been entered in error, thereby reinstating the case.  

Also, during the original appeal, shortly before this court issued its prior opinion, the building was sold to Chicago Title and Trust Company, as trustee under trust No. 1102416.  This sale was made pursuant to a purchase option in the lease agreement.  Because the corporate veil has been lifted to reveal that Tupanjac is the real party in interest, the trial court ordered restitution from him for all the rent received and the gross sale price, less the real estate taxes he paid.

By their stipulation, the parties agree that YACC, as rightful owner of the property conveyed, is entitled to restitution and that Tupanjac will have to pay.  At this stage, the dispute revolves around the correct amount of restitution.  Tupanjac now seeks a greater setoff.  He bases his claim on the amount he spent in improving the property and, as he characterizes it, the fact that the YACC would have lost the property and a lot of money but for his participation in the events previously described.  

The trial court granted YACC's motion to dismiss with prejudice count I of Tupanjac's counterclaim pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615)(West 1998)).  That count sought equitable subrogation for the monies Tupanjac spent in improving the building and facilitating the YACC keeping the building.  As to count II of the counterclaim, the trial court allowed the equitable reimbursement claim to stand only as to the payment of real estate taxes. 

ANALYSIS

I

Tupanjac now argues that the trial court lacked jurisdiction to further hear the case after the reversal by this court.  He claims the reversal by this court without a remand prevents the trial court from conducting further proceedings.  Tupanjac also claims that, since the case was dismissed and not reinstated within 30 days, the trial court had no authority to proceed.  

Tupanjac now seeks to offset the money he spent for the purchase and improvement of the property.  He argues that the decision of the trial court to limit his setoff to the amount of real estate taxes he paid fails to take into account that the purchase price of the building was significantly higher as a direct result of the expenditures he made.   He argues that the trial court should have endeavored to restore him to his prior position as part of a proper restitution.  He believes that, in light of the stipulation, he should be allowed to present evidence as to how he disbursed his money and how YACC benefitted from the payments.

YACC argues that the trial court had either continuing or revested jurisdiction to enter judgment on its complaint.  YACC argues that the reversal by this court in the prior appeal was limited to less than all of the issues in this case.  YACC claims that, since the prior appeal was filed pursuant to Supreme Court Rule 304(a), there were always issues before the trial court waiting to be litigated.  

YACC next argues that the issue of whether it was proper for the trial court to vacate the DWP order after the expiration of the 30-day period during which parties ordinarily are permitted to bring such motions is being made for the first time on appeal.  YACC argues that Tupanjac and all parties to the litigation proceeded as though the DWP had never been entered.  By participating in the proceedings, YACC argues, Tupanjac should be barred from objecting to jurisdiction.  

Finally, YACC contends the trial court was correct in dismissing Tupanjac's equitable subrogation claim.  It claims that Tupanjac had no reasonable basis for his claim since YACC was always in opposition to Tupanjac's claim of good title to the property.  YACC argues that the monies spent should be treated as officiously or gratuitously conferred benefits.  It concludes that since there existed no contractual relationship between the parties authorizing the expenditures, no good-faith belief of ownership and no voluntary acceptance of benefits, Tupanjac is not entitled to the relief he seeks.  

II

In a case that solely presents issues of law, such as this one where the facts were determined by stipulation and not by evidentiary hearing, this court reviews the matter 
de
 
novo
. See 
In Re D.S.
, No. 88460 (June 21, 2001); 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205 (1998); 
Gaidar v. Tippecanoe Distribution Service Inc.
, 299 Ill. App. 3d 1034 (1998).

The first consideration we must address is jurisdiction.  In the original appeal, this court defined its jurisdiction as follows:

“Following a bench trial on count I (action to quiet title) and count IV (conspiracy to defraud), the trial court found in favor of defendants and confirmed the sale based upon apparent authority principles.  
Only count I is currently on appeal pursuant to Supreme Court Rule 304(a)
 (134 Ill.2d 304(a)).”  (Emphasis added.)  
Yugoslav-American Cultural Center, Inc. v. Parkway Bank and Trust Co.
, 289 Ill. App. 3d 728, 729 (1997)

“Supreme Court Rule 304(a) allows an appeal from a final order that disposes of fewer than all of the parties or claims if an express written finding is made that there is no just reason to delay enforcement or appeal.”  
American National Bank & Trust Co. v. Bentley Builders, Inc.
, 308 Ill. App. 3d 246, 253-54 (1999).  The purpose of Supreme Court Rule 304(a) is to “'discourage piecemeal appeals in the absence of just reason, and to remove the uncertainty which exists when a final judgment is entered on less than all matters in the controversy.'”  
Mares v. Metzler
, 87 Ill. App. 3d 881, 835 (1980); quoting 
Petersen Brothers Plastics, Inc. v. Ullo
, 57 Ill. App. 3d 625, 630 (1978), 
Blanchette v. Martell
, 52 Ill. App. 3d 1029 (1977).  By definition, when YACC took the first appeal under Rule 304(a), that preserved the remaining issues for future consideration by the trial court.  When this court previously ruled, on June 30, 1997, reversing the decision of the trial court, it was done without a remand because no remand was required.  The issues disposed of by this court at that time were complete, with nothing left for the trial court to do. 

Since the trial court did not lose jurisdiction over the remaining issues because of the filing of the first appeal, this court next addresses what happened to that jurisdiction and those issues.   During the pendency of the first appeal, the parties were called to appear before the trial court.  On March 26, 1997, the parties failed to appear before the trial court.  At that time, the trial court was holding its call of the calendar, an annual event held for purposes of dismissing old, inactive cases.  Failure to appear in the trial court for a call of the calendar results in the entry of a DWP.  By that order, the remaining issues were dismissed.  This order never should  have been entered, owing to the pendency of the original appeal.  On May 22, 1997, some time after the expiration of the 30-day period during which motions to vacate DWP orders are customarily brought, the trial court vacated the DWP order.  The order contained the following language:

"This cause coming on to be hearing [
sic
] regarding the dismissal order entered March 26, 1997 as a matter of course, 
said order entered in error
 by reason that the cause was and is pending in the 
First Division of the Appellate Court (and the matters not therein pending having been transferred to the Law Division) and the Court being so advised;

It is ordered that the order of dismissal entered 03/26/97 is vacated and the action is reinstated.  Court ordered fee waived to vacate." (Emphasis added.)

The concept that a court can correct its records is an ancient one.  “'This power, therefore does not depend on statute - it is inherent.  It rests partly upon the right and duty of the courts to do entire justice to every suitor, and partly upon their control over their own records and authority to make them speak the truth.'”  
Knefel v. People
, 187 Ill. 212, 215 (1900); quoting 1 H. C. Black, Black On Judgments §126 (1891).  Though the 
Knefel
 case and its progeny are often applied to situations where the relief sought is a 
nunc
 
pro
 
tunc
 order, its wisdom is applicable to this case because the same power to correct the records is implicated here.  
The entry of the order in the case at bar was a pure error, in that the order of DWP never should have been entered.  It is that complete error which the trial court corrected.  

Another basis by which the trial court could have reinstated the case after the expiration of the 30-day period involves revestment.   “'[L]itigants may revest a court which has general jurisdiction of the matter with both personal and subject matter jurisdiction over the particular cause after the 30-day period following judgment during which post-judgment motions must ordinarily be filed.'” [Citations.]   
A.A. Store Fixtures Co. v. Shopiro
, 272 Ill. App. 3d 959, 966 (1995).  
Shopiro
 goes on to discuss how revestment works in this context.  

"The doctrine of revestment provides that 'all further proceedings upon the merits of a previously dismissed action are inconsistent with a prior order dismissing the action, it follows that any further proceeding upon the merits of a cause operates to nullify the order of dismissal.'  (
Gentile v. Hansen
, (1984) 131 Ill. App. 3d 250, 255, 475 N.E.2d 894, 897-98.)  A petition to vacate a dismissal order is not strictly necessary.  (
Gentile
, 131 Ill. App. 3d at 255, 475 N.E.2d at 897-98.)   The doctrine of revestment applies to actions which are dismissed for want of prosecution.  (
Gentile
, 131 Ill. App. 3d at 255, 475 N.E.2d at 897.)  Conduct which is inconsistent with the dismissal order is any which can be reasonably construed as an indication that the parties do not view the order as final and binding.  
Gentile
, 131 Ill. App. 3d at 255, 475 N.E.2d at 897."  
Shopiro
, 272 Ill. App. 3d at 966

The record post-DWP is replete with examples of both parties' active participation in the litigation.  These examples include, but are in no way limited to, the grant of leave to file further pleadings, the filing of the second amended complaint and the filing of the answer thereto.  In each of those examples, no jurisdictional objections were made.  In fact, the objections to jurisdiction ultimately raised by Tupanjac were based on the erroneous belief that the disposition by this court of the prior appeal in some way dismissed the entire action which we now know it did not.

We next address the specifics of Tupanjac's claims.  Tupanjac argues that he should be allowed in further proceedings to present evidence of his expenditures which he believes he should be able to recover from YACC.  We agree.  This appeal is limited to the information contained in the stipulation and any sources implicated by reference therein, including the exhibits attached to the stipulation and his first amended counterclaim.  The stipulation identifies with specificity the amounts paid by Tupanjac for real estate taxes during tax years 1989-95 and for the first installment in 1996.  The total paid during that period was $60,747.05.  Exhibit A to the stipulation includes certain classes of expenses that Tupanjac claims enhanced the value of the property and made it more saleable.  These claimed expenses include, but are not limited to, certain classes of interest paid on loans due, cleaning costs, roofing costs, heating repairs, electricity, and gas company expenses.  These classes of expenses were specifically excluded by the trial court when it found that, based upon this court's prior ruling, Tupanjac was not an innocent purchaser of the property.  We disagree with the trial court's interpretation of the scope of our prior ruling.  We previously ruled that “[i]f Tupanjac believes the equities of the case require that the money he has expended to purchase and renovate the building be returned to him, his remedy must come under some equitable theory such as quasi contract or 
quantum
 
meruit
.”  
Yugoslav
, 289 Ill. App. 3d at 740; see, 
e.g.
, 
River Park, Inc. v. City of Highland Park
, 281 Ill. App. 3d 154 (1996); 
Willens v. City of Northlake
, 19 Ill. App. 2d 316 (1958).  By declaring that, as a matter of law, there is no way Tupanjac could have been in good faith, the trial court prevented him from proving up how the alleged expenses enhanced the property so as to make it more saleable.  We did not and we do not agree that there is “no way” Tupanjac could purge himself of the alleged wrongdoing in connection with the original transaction.  He should at least be able to present some evidence on this crucial issue.   “Illinois courts recognize an action derived from the doctrine referred to as quasi contract, contract implied in law, 
or 
quantum
 
meruit
, the obligations of which may be enforced independent of any agreement between the parties or their personal intentions.”  
Knaus v. Dennler
, 170 Ill. App. 3d 746, 751 (1988); citing 
Rutledge v. Housing Authority of the City of East St. Louis
, 88 Ill. App. 3d 1064 (1980).  When a deed is found by an appellate court to be invalid and the case is reversed it is the duty of the court to restore the parties to the 
status quo 
ante
 to the closest degree possible.  
Thompson v. Davis
, 297 Ill. 11 (1921).  Since there is a reasonable chance that one or both of the parties, thinking the property transfer was valid, would change their position in response to the transaction, such a reversal by the appellate court opens the door to possible unjust enrichment.  Recovery under an unjust enrichment theory requires a showing that the defendant has voluntarily accepted a benefit that it would be inequitable for him to retain without payment since the law implies a promise to pay compensation when value of the services are knowingly accepted.  
Knaus v. Dennler
, 170 Ill. App. 3d 746, 751 (1988).  This suggests that the trial court has a duty to "restore the parties to their rights by requiring the [parties] to make restitution of the advantage gained by the reversed decree."  
Thompson
, 297 Ill. at 15.  Whether there have been services, or in this case improvements and repairs, and whether those improvements and repairs enhanced the value of the property are questions for the trier of fact.  We view further trial court proceedings as the most equitable basis for giving Tupanjac an opportunity to present evidence showing he can purge himself of any alleged wrongdoing in connection with the initial transaction and prove up his expenses.  Provided the trial court's inquiry is properly limited in scope to those expenses that enhance the value of the property, Tupanjac will either succeed or fail to show he directly conferred to YACC a benefit that would not otherwise have existed.  Whether Tupanjac can successfully prove up his claims remains to be seen.

CONCLUSION

In light of the foregoing, the judgment of the trial court is reversed and the cause is remanded for the limited purpose of giving Tupanjac the opportunity to purge himself of any alleged wrongdoing in connection with the initial transaction and prove up his claimed offsets.  

Judgment reversed and cause remanded with directions.

THEIS, J., concurs.

JUSTICE GREIMAN, dissenting:

In 
Yugoslav-American
, 289 Ill. App. 3d 728 (
Yugoslav-American I
), we determined that Tupanjac was a party controlling the corporation which fraudulently received a deed to the subject property from YACC.  Although Tupanjac was not an officer of the YACC, he apparently was involved in the corporation with the YACC secretary.  Thereafter, there was a subsequent conveyance of the property to a nominee and it was later revealed that Tupanjac was the real party in interest.  In 
Yugoslav-American I
, the majority acknowledges that Tupanjac was aware that the seller of the premises was a Yugoslavian club and that he had never been advised that the two officers had authority to sell and convey the property.  
Yugoslav-American I
, 289 Ill. App. 3d at 737.

We said then that "[s]uch admissions greatly undermine Tupanjac's claim that he reasonably or justifiably relied upon the apparent authority" of these officers.  
Yugoslav-American I
, 289 Ill. App. 3d at 737.

Additionally Tupanjac's lawyer played a major role on behalf of all of the parties and was quite aware that Barjactarevic was a corporate officer of YACC who authorized the sale and one of the initial purchasers of the property, "a clear conflict of interest that would undermine any actual authority Barjactarevic might have to authorize the sale."  
Yugoslav-American I
, 289 Ill. App. 3d at 737-38.

Yugoslav-American I
 further observes that "knowledge of an attorney is treated as knowledge of, or at least knowledge imputed to, the client, notwithstanding whether the attorney has actually communicated such knowledge to the client."  
Yugoslav-American I
, 289 Ill. App. 3d at 737.

Quite clearly Tupanjac took advantage of the initial fraudulent conveyance and sought later to set out an apparent conveyance to a 
bona fide
 purchaser for value although he remained the real party in interest.

Although he was not an officer of YACC at the time of the fraudulent conveyance, it is difficult to imagine that he can purge himself of the wrongdoing in connection with the initial transaction since he was a participant in the grantee corporation and his lawyer's knowledge is fully imputed to him.

Now he seeks restitution of monies spent to improve and enhance the value of the building.  The majority has thoughtfully set out the equitable theory of quasi contract or 
quantum meruit
.

However, one of the ancient maxims of equity is that he who comes into equity must come with clean hands.  
La Salle National Bank v. 53rd-Ellis Currency Exchange, Inc.
, 249 Ill. App. 3d 415 (1993); 
In re Marriage of Stuckert
, 138 Ill. App. 3d 788 (1985).  The purpose of the "unclean hands" doctrine is to protect courts of equity from assisting litigants in accomplishing their fraudulent or unlawful purposes.  
Cole v. Guy
, 183 Ill. App. 3d 768 (1989).

Although 
Yugoslav-American I
 is founded upon the failure of the board to adopt a resolution, the inappropriate scheme of the officers executing the deed and the role of the grantees are clear.

Here the conduct of which the parties complain is directly involved in the transaction that was at issue in 
Yugoslav-American I
.  For a court to invoke the "unclean hands" doctrine, such conduct must be directly involved in the very transaction at issue before the court.  
Cole v. Guy
, 183 Ill. App. 3d 768 (1989); 
Holsinger, Theis & Co. v. Holsinger
, 329 Ill. App. 460 (1946).  That was the case there and that is the case here.

As we have previously noted, the trial court indicated that there was no way Tupanjac could have acted in good faith. 

The majority would return the matter to the trial court to determine whether Tupanjac has a right in equity to 
quantum meruit
 and if so to determine the improvements and expenses provided by Tupanjac to the premises.  The trial court's refusal to allow Tupanjac to prove up the alleged expenses that enhanced the property is, in effect, the application of the "clean hands" doctrine.  Trial courts are generally allowed wide discretion in the application of this equitable principle and we should not disturb it.

To be sure, even where there is fraud or inappropriate conduct by a party, the court does not always invoke the "clean hands" doctrine where one party shows that the property was greatly enhanced.  
Graham v. Mimms
, 111 Ill. App. 3d 751 (1982).  However, in the instant matter, the trial court has appropriately exercised its discretion.  One might ask, why would we allow restitution of the real estate taxes paid while ignoring the other expenses that have been incurred by Tupanjac?

The inappropriate transaction has robbed YACC of its options.  It could have decided to sell the property "as is."   It could have decided to rent the property to a tenant with a net-net lease where the tenant would have been required to make all the improvements and restorations.  It could have decided to take the building down and hold it for future investment as the area gentrified. 

All of those were possible options for YACC.  The payment of real estate taxes, however, was not such an option and accordingly restitution of those sums seems fair and equitable and well within the discretion of the trial court.

Accordingly, I would affirm the judgment of the trial court.