2019 IL App (2d) 190176-U
No. 2-19-0176
Order filed December 11, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| RBS CITIZENS, as Successor to Charter One Bank, N.A., | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 10-CH-553 |
| HUGO DIAZ, STONEGATE CONDOMINIUM ASSOCIATION, NONRECORD CLAIMANTS, AND UNKNOWN OWNERS, | ) ) ) ) ) | |
| Defendants | ) ) | |
| (Hugo Diaz, Defendant and Petitioner-Appellant; Citizens Bank, N.A., as Successor to RBS Citizens, Respondent-Appellee). | ) ) ) | Honorable Robert W. Rohm, Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Birkett and Justice Burke concurred in the judgment.

**ORDER**

¶ 1   *Held*: Defendant did not show *prima facie* reversible error in the trial court's refusal, after granting his section 2-1401 petition, to award him restitution in the section 2-1401 proceeding as opposed to the reopened underlying case.

¶ 2   Hugo Diaz, the property-owner defendant in a mortgage foreclosure action, appeals from

an order in which the court, although granting his petition under section 2-1401 of the Code of

Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2018)), declined to order monetary restitution for the property of which RBS Citizens (RBS) (the successor to the original mortgagee, Charter One Bank, N.A.) had improperly taken possession. He asserts that the court erred in ruling that it could not properly grant monetary restitution upon vacating an order under section 2-1401. No party has filed an appellee's brief, so Diaz must at least satisfy the minimum standard for reversal under *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976): that the "brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record." We conclude that Diaz's argument fails to meet that minimum standard. We therefore affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On February 1, 2010, RBS, holder of the first mortgage on a condominium at 415 Gregory Avenue, Unit 2D, Glendale Heights in Du Page County, filed a foreclosure action against Diaz, the condominium's owner. The other named defendant was the Stonegate Condominium Association. RBS filed the affidavit of a special process server, Dennis Velickovich, in which he averred that he served the complaint on Diaz by substitute service—he said that he left the complaint with Diaz's father at Diaz's "usual place of abode": 61 Parkview Drive, Northlake, which is in Cook County. The record does not contain an order appointing Velickovich or his employer as special process server. Neither defendant appeared, and the court entered an order of default against both.

¶ 5    The court entered a judgment for foreclosure and sale on April 30, 2010. The judicial sale took place on August 12, 2010, with RBS buying the condominium for $40,554 of the judgment debt. The court confirmed the sale on August 27, 2010.

¶ 6     On November 8, 2017, Diaz filed a "Petition to Vacate Void Orders" under section 2-1401 of the Code. He noted that the record contained no order appointing a special process server and that Velickovich had purported to make substitute service on Diaz in Cook County. (Under section 2-202(a) of the Code (735 ILCS 5/2-202(a) (West 2010)), when process is served in Cook County, any special process server must have first been appointed by the court. See *U.S. Bank National Ass'n v. Rahman*, 2016 IL App (2d) 150040, ¶ 33 (section 2-202(a) applies when process is to be served in Cook County regardless of the county in which the case is pending).) Diaz contended that, because there was no order appointing a special process server, the service was invalid. Thus, the court had failed to gain personal jurisdiction of him in the foreclosure case and all orders entered in that case were therefore void. Diaz asked that the court vacate all orders entered in the case and for other unspecified relief.

¶ 7     Diaz served the petition on RBS's successor, Citizens Bank, N.A., which did not appear. The court, over Diaz's objection, required him to serve the petition at the condominium and on Mota Venture Group, LLC (which is elsewhere identified as having bought the condominium from RBS for $39,000 on June 6, 2011).

¶ 8     Diaz then filed an "Amended Motion for Entry of an Order of Default and Related Relief." In this, as well as requesting a finding of default, Diaz suggested that he was seeking a money judgment against Citizens Bank:

> "Petitioner is entitled to an Order of default against the Original Plaintiff and proceed to *have a judgment entered against Original Plaintiff in an amount commensurate with the benefits Original Plaintiff received as a result of the erroneous judgment* entered in the foreclosure." (Emphasis added.)

¶ 9    The court entered the order of default, and, on May 31, 2018, the court granted Diaz the vacaturs he sought in his petition:

"This matter [coming on to be] heard for Prove-up it is hereby ordered that all orders entered in the foreclosure [bearing] the same caption are hereby vacated as void ab initio and that the lack of personal jurisdiction is apparent on the face of the record."

¶ 10    Diaz then filed a "Motion and Memorandum of Law in Support of Restitution." He sought to show that he was entitled to a money judgment of $56,730.60 as restitution, a figure that included the "net sale price" of $31,911.57, interest of $17,957.25, and "Use and Occupancy" of $6,861.78. He argued that, "[h]aving granted [his] petition to quash and vacated the void orders against him, [the] Court [was] now required to order restitution":

"Because restitution is the vehicle by which courts correct injustice done by their own rulings, and because courts are bound by duty to order restitution, restitution cannot reasonably be described as discretionary. Restitution is the *right* of an aggrieved party. Ordering restitution is the *obligation* of a court responsible for an erroneous judgment. As such, this Court, having granted Diaz's petition to quash and vacated the void orders against him, *must* order restitution." (Emphases in original.)

He further argued that the law requires a court to order restitution after a "[r]eversal" in a section 2-1401 proceeding, just as it would after a reversal by a reviewing court. Finally, he argued that, "[i]f, upon the vacating of a void judgment, a return to the *status quo ante* is not possible (for instance, where the property is not capable of being returned), courts must order monetary restitution."

¶ 11    On February 4, 2019, the court held a hearing on Diaz's request for restitution. The court, noting that the condominium was vacant, asked Diaz how he could claim that a return to the

*status quo ante* was impossible when he had done nothing to get an order of possession. Diaz conceded that he had made a deliberate choice to seek restitution from Citizens Bank rather than attempting to regain possession of the property and thus had not sought to join the condominium's current owner in the section 2-1401 action. The court ruled that, because it was Diaz's own choice to create conditions preventing the court from restoring the condominium to him, requiring Citizens Bank to pay restitution was improper.

¶ 12    The court next asked Diaz to persuade it that it had the power to grant monetary restitution in the section 2-1401 proceedings proper as opposed to in the reopened underlying case. Diaz discussed the cases he cited in his memorandum, but he did not provide direct authority for the availability of such relief. He seemed to concede that he could pursue restitution in the foreclosure case proper but suggested that, if he did so, Citizens Bank would have more procedural options open to it. The court entered an order denying restitution:

> "[F]or the reason's [*sic*] stated on the record the Petitioner's Motion for Monetary Restitution is denied. The Court further finds that restitution is improperly made in a Section 2-1401."

Diaz filed a timely notice of appeal.

¶ 13                                II. ANALYSIS

¶ 14    In his appeal, Diaz makes an argument much like that which he made in his "Motion and Memorandum of Law in Support of Restitution": he contends that only by ordering restitution could the court undo the effect of its improper judgments. Further:

> "Because the power of a trial court to order restitution is inherent in its jurisdiction over the case and the parties, there is no distinction between restitution following a reversal by an appellate tribunal and restitution following a reversal by the trial court's own

judgment. The duty of the trial court to restore the parties to their original positions prior to the void judgment applies with equal force in either case. Having granted Diaz's petition to quash and vacated the void orders against him, the trial court was obligated to order restitution without delay and erred in denying Diaz restitution."

¶ 15    In *Talandis*, the supreme court stated that, in the absence of an appellee's brief, a reviewing court has three options:

"[First, the supreme court does] not feel that a court of review should be compelled to serve as an advocate for the appellee or that it should be required to search the record for the purpose of sustaining the judgment of the trial court. It may, however, if justice requires, do so. [Second], it seems that if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal. [Third, i]n other cases if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record the judgment of the trial court may be reversed." *Talandis*, 63 Ill. 2d at 133.

Diaz argues here that Illinois law mandated that the court award monetary restitution in the section 2-1401 proceeding. As this is an issue of law, our review is *de novo*. See *J&J Ventures Gaming, LLC v. Wild, Inc.*, 2016 IL 119870, ¶ 25 (two disparate issues of law—the circuit court's jurisdiction and the interpretation of a statute—both required *de novo* review).

¶ 16    The court denied Diaz's request for restitution on two bases, one substantive—that restitution was unavailable when Diaz might recover the property by joining the current owner as a party—and one procedural—that a request for restitution does not belong in a section 2-1401 proceeding. These bases were independent, so, to prevail, Diaz must show that neither was proper.

We conclude that Diaz's brief fails to show on its face that the procedural basis was improper. That is dispositive, so we address only that issue.

¶ 17    Diaz presents several lines of authority tending to show that a court must award monetary restitution when an order dispossessing a person of property is vacated and the property has since been sold. But he presents no authority tending to suggest that a court must make that award in a section 2-1401 proceeding. He thus fails to demonstrate that the procedural basis for denying restitution was *prima facie* reversible error.

¶ 18    Diaz has shown *prima facie* that restitution is mandatory when a judgment ceases to be in effect. He appropriately cites *Williamsburg Village. Owners' Ass'n, v. Lauder Associates*, 200 Ill. App. 3d 474, 483 (1990), for the proposition "that upon the reversal of a judgment, under which one of the parties has received benefits, he is under an obligation to make restitution." He also appropriately cites *Thompson v. Davis*, 297 Ill. 11, 15-19 (1921), for the proposition that, on the reversal of a foreclosure judgment, when the postjudgment sale of a property prevents a court from restoring the foreclosure defendant to the *status quo ante*, the proper remedy is to award the defendant the sale proceeds in place of the land. (Although *Thompson* is nearly a century old, it has been cited as authority on this specific point as recently as 2001. See *Yugoslav-American Cultural Center, Inc. v. Parkway Bank & Trust Co.*, 327 Ill. App. 3d 143, 150 (2001) ("When a deed is found by an appellate court to be invalid and the case is reversed it is the duty of the court to restore the parties to the *status quo ante* to the closest degree possible."); see also *Royalty Farms, LLC v. Forest Preserve District*, 2017 IL App (1st) 161409, ¶ 28 (citing *Thompson* for nearly the same proposition).)

¶ 19    However, Diaz's authority for his claim that the law required the court to order restitution in the section 2-1401 proceeding is not satisfactory. Citing *Watkins v. Dunbar*, 318 Ill. 174, 178

(1925), Diaz argues that "[a]s long as the court has jurisdiction over the parties, *it has no choice but to order restitution.*" (Emphasis in original.) He contends that, under *Watkins*, "[o]nce the orders were vacated as void, the court, having jurisdiction over the parties within the section 2-1401 proceeding, was required to order restitution as the concluding order in the section 2-1401 proceeding." That is a misreading of *Watkins*. At issue in *Watkins* was whether, after a reviewing court reversed a replevin order, the trial court had the power to enter an order to return the replevied property when the reviewing court failed to remand the cause. *Watkins*, 318 Ill. at 176-77. Our supreme court held that the trial court lacked that power:

> "There is no doubt about appellee's right to have restored to him the property taken by appellant on reversal of the judgment entered in the replevin case [citations]; but, *in order to have a judgment of restitution entered, an application for it must be made in a court where the cause is pending and which has jurisdiction of the parties.* [Citation.] The power is inherent in every court while the subject of controversy is in its custody, either in the first instance or when remanded to it by an appellate tribunal and while the parties are before it, to correct its errors and to restore, so far as possible, the parties to their former position [citation], but *the power to make a valid order cannot survive the loss of jurisdiction.*" (Emphases added.) *Watkins*, 318 Ill. at 178.

The *Watkins* court therefore held that the trial court lacked jurisdiction to enter the restitution order. *Watkins*, 318 Ill. at 177-78. This holding is simply a statement of conventional jurisdictional principles.

¶ 20    Diaz attempts to convert the holding into a legal principle mandating that any court with jurisdiction enter all restitution orders that become necessary, but the *Watkins* court neither said nor implied such a thing. Further, although Diaz cites 20 individual cases, none of them addresses

what a court may properly do in a section 2-1401 proceeding. Thus, we conclude that Diaz has failed to make a *prima facie* showing that the trial court erred in ruling that the section 2-1401 proceeding was not a proper vehicle for a restitution award.

¶ 21    We also note that granting Diaz's request for monetary restitution would have required the court to decide several fact issues that are unrelated to the central section 2-1401 issue of whether he was entitled to relief from judgment. When a section 2-1401 petitioner alleges facts suggesting that the court should vacate a judgment to allow further proceedings in the underlying action, the relief a court typically grants is just that: it reopens the underlying action without addressing its merits (*Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 107 (2006)). Sometimes deciding whether that basic relief is available requires the court to address new issues of fact. See *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 223 (1986) (where the petitioner sought to vacate a default judgment, the court could resolve the relevant issues of fact from either "the pleadings, affidavits, and supporting materials in evidence" or, if requested, an evidentiary hearing). However, Diaz has not provided us with any authority supporting the propriety of a court in a section 2-1401 proceeding deciding issues of fact beyond those required to decide the petitioner's right to reopen the underlying case.

¶ 22                            III. CONCLUSION

¶ 23    For the reasons stated, we affirm the court's order declining to award Diaz monetary restitution in the section 2-1401 proceeding.

¶ 24    Affirmed.